By the Court. 
*

This is an appeal, from the first i uclicial District. Cross actions had been J instituted in the Superior Court of the late territory, which were afterwards consolidated and referred to arbitrators. A report was made, but it does not appear, that it was confirmed. Every thing that has been said, on the subject of the award had no application and is unnecessary to be noticed by the Court.
We will not enter into a full statement of the case, as" it sufficiently appears on the face of the record. A brief one of the principal facts will enable us to understand the points in dispute.
On the 22d. of December, 1805, the appellant and appellee entered into articles of partnership for the purpose of establishing a sugar plantation near this'city. St. Pé put into stock a tract of land of ten acres in front, a saw mill and negroes, amounting in all to the value of S 21,900. Several slaves and money to a considerable amount were brought into the partnership by Duplantier. It was agreed that more land, adjoining the tract already mentioned, should be purchased and it was stipulated, that the proceeds of the crops *151 should be employed in discharging the engage* ment of the parties with Mayronne and Others: and in case, they should not be sufficient, each of them should contribute all his means to effect the payments. St. Pé was charged with the superintendence of the plantation, and it was farther agreed that. the partnership should continue for five years : at the expiration of which period, if the parties should not agree on the division of the common property, an estimate of it should be made, and either party who chose, should take it and be accountable to the other for one half of the amount of the valuation.
On the 8th. of June 1811, an agreement was signed in the presence of three witnesses. By that instrument, it is covenanted that Duplantier should keep the plantation, and every thing apper-⅝ taining to the establishment, at the price of S 108,000. He transfers to St. Pé ten acres of land and seven slaves, in compensation of the part supposed to be due him, at the dissolution of the partnership. It was further agreed that the accounts of the parties should then be settled, as soon at possible, and if Duplantier should be in? debted to St. Pé, he should pay the amount in his notes at one and two years with the same interest which St. Pé should pay.
It is contended that this was a mere project of an agreement—that it was not solemnly en *152 ter®d into by the parties,, and if it .was, that if has been since rescinded. 7
This is inferred 1. from the conduct of St. Pé, on the offer to Tricon and 2. on the circumstance that the agreement is not relied on by the appel-lee, in his petition to the Superior Court.
It certainly, appears that St. Pé was willing that a sale should be made to Tricou. No final settlement had taken place of the accounts of the parties. Duplantier had possession of every thing and seemed little disposed to come to any arrangement. Besides, the offer made by Tricon-in-cluded the ten acres which Duplantier had contracted to cede to St. Pé, which together with the negroes were in compensation of what might appear to be due : it was essential then that he should be consulted and that his consent should be obtained to the sale.
, UNDER these circumstances, it is not extraordinary, that St. Pé should have supposed that, if an advantageous sale could be made to Tricou, a speedier settlement might be brought about. No arrangement having taken place with TricOu, the parties were in statu quo before the proposal.
As to the other objection, nothing can be inferred from it advantageous to the appellant. The agreement is distinctly stated, in the petition and altho’ the áppellee claim more that he was entitled *153 to, the Court caK Seeínd reason for sitting aside the contract.
We are clearly 'tff opiHiétty that the Judgte be-tow was correct in pronouncing that the contract vested a right in the parties to the property reciprocally conveyed, leaving aH matters in difference, as to their accounts, subject to after liquid dation.
As tó the question of interest, ^the Court is also of opinion that the Judge below was correct. There is certainly nothing said in the contract on. this subject. It does not appear that it was the intention of the parties, that interest should be paid. St. Pé had put in his all, and on him dev volved the whole burthen of managing the plantation. If the crops should not be sufficient to pay off the engagements of the partnership, all the means of the parties were pledged. St. Pé’s means were exhausted, and it then became Duplan* tier’s*duty to use his, without any expectation of interest, but only to participate in the' profits, which might arise from the use of these means.
Btrr, it is said, he was compelled to borrow considerable sums of money, at an enormous in-' terest. It does not appear that he was compelled to do so, for the purpose of carrying on the plantation. It is presumed that had he applied his funds solely to the sugar establishment, great profits *154 vVould ¼¾¾⅜⅜# made; but, we have it in evidence that he was engaged in other extensive speculations. These speculations were in all probability, the real cause of his.being compelled to resort to the tribe of usurers : but for this his partner ought not to, suffer. - We are of opinion that the Court below was right in not making any allowance of interest, but what may have bé'en included,^ in the account settled by the parties, making a balance in favour of Duplantier of & 59,110.
; But it is said, that at all events, interest must be allowed on the sums paid to Mayronne Mid Gravier—¡that Duplantier is, subrogated to their rights and to this point is offered the authority ofDomat. , , ,
. To this, it is sufficient to answer that Duplan- ' tier was intimately acquainted with the situation of St. Pé : lie knew exactly the extent of his means. The plantation of Mayronne is mentioned in the articles of co-partnership, and was in the contemplation of both parties ; means of paying for it are pointed out. If the crops should not be sufficient, both parties were to come on with their funds : but, is it stipulated that he who advances, shall receive any interest' from the other ? Was it ever imagined by either? Certainly not.
. But, interest must be paid, is it said, for Gravier’s mortgage. Who urged St. Pé to make this purchase ? Duplantier. Letter follows let *155 ter, pressing him to chase with Gravier. He writes “ my means are abütó»t, tf forturfe*: falls to per* “ secúteme. Gravier’s plantation mustnotescape “you. ” Can we, for an instant, believe that it was ever contemplated that St. Pé was to pay interest? Upon this point, the Court have - no doubt. The doctrine of subrogation has nothing to do with the case, and we are clearly qf opinion that no interest is due. .
It is said the judgment of the Court below is erroneous, because it has not decreed a con. veyance of the land and negroes. '
On this point, it is the opinion of this Court, that the agreement, of the 11th. of June, amounts to a partition of the estate. It was, before that period, holden jointly by theparties. The estate is severed by that act and each party holds his separate share, as partitioned by it.
We are of opinion, that the District Court was right, in decreeing that whatever balance should remain in favour of St. Pé, after being put in possession of the land and negroes, should be paid in two yearly instalments, to run from the date of the judicial demand. : ¡
It is ordered and decreed (errors appearing in the calculation) that this case be remanded to the District Court, with instructions to proceed to' *156 ⅜⅝1>* for th#iipatpose of ascertaining the aroojiftf accordingikitp the principles, established; by this COW!.;.'.

 Derbigny, J. did not. join in this opinion,having been of counsel in the cause.